**Ingalls v. Hertz Corp.**

2

*Andrew E. Steckiw,* for plaintiff.
*Jay Edelstein and Lawrence Kelly,* for defendant.

HERRON, *J.,* March 7, 1996—This opinion elaborates on an order issued on January 4, 1996 which granted judgment in favor of defendant Hertz Corporation and against plaintiff Maura M. Ingalls, trustee for the benefit of United Services Automobile Association. The parties submitted this controversy to the court on a "case stated" basis. The facts are not in dispute.[1] The court must therefore resolve the inherent legal issues based on the stipulation of facts, the briefs and the key documents presented by the parties.[2]

## FACTUAL BACKGROUND

On August 13, 1990, plaintiff Maura M. Ingalls was injured in an automobile collision. At the time of the

1. This action was initiated as a declaratory judgment action. On March 21, 1995, the parties agreed to a "case stated" stipulation of facts for the consideration of the court which incorporated defendant's amended stipulation of facts dated May 18, 1994. See defendant's case stated trial brief, appendix A. The May 18, 1994 Stipulation will hereinafter be cited as 5/18/94 Stipulation.

2. The parties presented for review a rental agreement pamphlet and a signature page of the rental record which was signed and initialed by Maura Ingalls. See plaintiff's trial brief exhibits A & B.

accident, she was driving an automobile which she had rented from the defendant, Hertz Corporation several days before the accident. Hertz was certified as self-insured in the Commonwealth of Pennsylvania.[3]

Plaintiff Ingalls was subsequently offered the full limit of the other underinsured driver's liability insurance from his insurer Allstate Insurance Company. However, Ingalls requested defendant Hertz to act as a primary underinsured motorist obligor and consent to settle in a general release with the underinsured driver and Allstate Insurance Company.[4]

Defendant Hertz refused to agree to these demands and denied that it had any obligation to provide Ingalls with any underinsured motorist benefits on the facts and circumstances of this case.[5] Plaintiff argues that Hertz was obliged to provide underinsured motorist benefits because at the time she rented the car, Hertz offered to its renters, as optional coverage in Pennsylvania, underinsured motorist benefits.

---

3. See 5/18/94 Stipulation at paras. 1-3.

4. In addition, Ingalls was insured by United Service Automobile Association under a New Jersey issued policy. USAA, as plaintiff's excess UIM insurer, also made a demand that Hertz "be the primary UIM obligor in this instance." 5/18/94 Stipulation at paras. 4-5.

5. *Id.* at para. 6. Plaintiff ultimately received payment from Allstate and USAA but USAA preserved its right to subrogate against defendant Hertz. The relationship among the various insurers is somewhat complex and is most clearly explained in the stipulation itself: "USAA, as an obligor of underinsured motorist benefits, gave Ingalls consent to settle her liability claim against the underinsured tortfeasor for the full underlying policy limit, and Ingalls executed a general release as to the underinsured Poplas (other driver) and his insurance carrier, Allstate. Upon exhaustion of the Allstate liability limits, USAA paid Ingalls $15,000 in settlement of her underinsured motorist claim. 5/18/94 Stipulation at para. 7.

## DISCUSSION

It is undisputed by the parties that defendant Hertz is self-insured as defined by the Pennsylvania Motor Vehicle Financial Responsibility Law. See 75 Pa.C.S. §1787. This law sets forth specific responsibilities for self-insured entities:

*"Section 1787 Self-Insurance*

"(a) General rule.—Self-insurance is effected by filing with the Department of Transportation, in satisfactory form, evidence that reliable financial arrangements, deposits, resources or commitments exist such as will satisfy the department that the self-insurer will:

"(1) Provide the benefits required by section 1711 (relating to required benefits), subject to the provisions of subchapter B (relating to motor vehicle liability insurance first party benefits), except the additional benefits and limits provided in sections 1712 (relating to the availability of benefits) and 1715 (relating to availability of adequate limits).

"(2) Make payments sufficient to satisfy judgments as required by section 1774 (relating to payments sufficient to satisfy judgments).

"(3) *Provide uninsured motorist coverage up to the limits set forth in section 1774.*" (emphasis added)

The plaintiff concedes that under section 1787 a self-insured entity is obliged to provide only uninsured—and not underinsured—motorist coverage.[6] Plaintiff argues however that Hertz should be held liable to her for underinsured motorist coverage on the following basis:

"It is agreed by the parties, however, that the defendant Hertz Corporation, although not obligated to offer UIM coverage to its renters, nevertheless did so to its renters

---

6. Plaintiff's brief at 3.

in Pennsylvania, including plaintiff Ingalls. Having done so, the question remains whether such offering by Hertz and apparent rejection by the renter Ingalls were sufficient and proper so as to justify Hertz's denial to pay UIM benefits to Ingalls for the injuries she sustained as a result of her accident caused by underinsured tortfeasor." Plaintiff's brief at 4.

Although plaintiff does not cite to the specific language or actions by Hertz which constituted an offer of underinsured motorist coverage to its renters,[7] plaintiff does attach to her brief two photocopied pages bearing the heading "Rental Agreement Terms and Conditions." These pages provide, inter alia, as follows:

*"Liability protection*

"Hertz will indemnify, hold harmless and defend You and any Authorized operators FROM AND AGAINST LIABILITY TO THIRD PARTIES, EXCLUDING ANY OF YOUR OR ANY AUTHORIZED OPERATOR'S FAMILY MEMBERS RELATED BY BLOOD, MARRIAGE OR ADOPTION RESIDING (illegible) YOU OR THEM For bodily injury and property damage the limits of this protection, including (Hertz's) liability, are the same as the minimum limits required by the automobile financial responsibility law of the jurisdiction in which the accident occurred, unless higher limits apply for the . . . Number/Rate plan shown on the rental record which accident results from the use of the car as permitted by this Agreement. This will conform to the basic requirements of any applicable 'No Fault' law BUT DOES NOT INCLUDE 'UNINSURED MOTORIST,' 'UNDERINSURED MOTORIST,' 'SUPPLEMENTARY NO-FAULT' OR ANY OTHER OPTIONAL COVERAGE. TO THE EXTENT PERMIT-

---

7. Plaintiff does, however, cite to the attached rental pamphlet as an invalid waiver of UIM coverage. See plaintiff's brief at 4.

TED BY LAW, HERTZ AND YOU HEREBY REJECT THE INCLUSION OF ANY SUCH COVERAGE. In the event that any such coverage is imposed by operation of law, then the limits of such coverage will be the minimum required by the law of the jurisdiction in which the accident occurred." See "Rental Agreement" attached to plaintiff's brief.

At the time of the rental, Hertz offered to Ingalls as an optional coverage underinsured motorist benefits. Ingalls thereafter initialed and signed the "signature page of the rental record." [8]

As a threshold issue, the Pennsylvania Supreme Court has ruled that under section 1787 of the MVFRL self-insured entities such as Hertz are not required to provide underinsured motor liability coverage. *Hackenberg v. SEPTA*, 526 Pa. 358, 586 A.2d 879 (1991). While under *Hackenberg* and section 1787 Hertz was not required to offer underinsurance coverage, it also was not precluded from offering this coverage which it did in its LIS coverage. Ingalls opted not to accept this coverage.[9] She is therefore not entitled to underinsurance benefits from Hertz. *Beaty v. Hertz,* no. 91-1034 (M.D. Pa. January 3, 1992) at 5.

Plaintiff nonetheless argues that once Hertz "made available or offered to the plaintiff UIM coverage, defendant Hertz must comply with the rejection or waiver requirements set forth in 75 Pa.C.S. §1731." Plaintiff's

---

8. See Stipulation at paras. 9 & 10, exhibits A & B. Unfortunately, the copy of this signature page of the rental record is unclear although Ms. Ingall's signature and initials are clear. The plaintiff, however, attached a clear copy of the underlying document to the complaint as exhibit B. This printed form indicates that Maura Ingalls declined optional coverage but it lacks the signature and initials. See complaint, exhibit B. The parties are in agreement, however, that Ms. Ingalls signed and initialed this document. See 5/18/94 Stipulation at para. 10 & exhibit B.

9. See plaintiff's brief at 4-5; defendant's brief at 5.

brief at 4. Section 1731 requires that motor vehicle liability insurance policies should offer uninsured and underinsured coverage but that purchasers had the option to reject this coverage. It also sets forth a "written rejection form" which should be signed when an insured rejects uninsured motorist coverage. Finally, it requires that these rejection forms should be printed on separate sheets of paper in prominent type and location. See 75 Pa.C.S. §1731(a), (b) & (c.1). Key portions of section 1731 were added by Act no. 6, of 1990, February 7, P.L. 11, no. 6, section 9 effective July 1990.[10] This is significant because these provisions of section 1731 are at the heart of the present controversy. The critical question is whether the waiver provisions of section 1731 apply to the self-insured Hertz.

The Pennsylvania Superior Court in a carefully reasoned opinion has considered this issue and concluded that the waiver provisions set forth in section 1731 do not apply to self- insurers. See *Gutman v. Worldwide Insurance Co.,* 428 Pa. Super. 309, 630 A.2d 1263 (1993).[11] In reaching this conclusion, the *Gutman* court

---

10. See Historical and Statutory Notes to 75 Pa.C.S. §1731. In particular, the 1990 Amendment rewrote subsection (a) of section 1731. It modified subsection (b) by adding this second sentence: "The named insured shall be informed that he may reject uninsured motorist coverage by signing the following written rejection form." The 1990 Amendment added the written rejection form. Finally, the 1990 Amendment added subsection (c.1) which outlined the "form of waiver" requiring, inter alia, that the waiver form be printed prominently on separate sheets. See *id.*

11. The *Gutman* court was forced to analyze the interrelationship of sections 1787 (relating to self-insurers) and 1731 (relating to waiver of uninsured and underinsured motorist coverage) to determine whether a self-insurer's obligation to provide uninsured motorist coverage under 1787 was changed by Act no. 6 of 1990, February 7, P.L. 11, no. 6. Although the *Gutman* court was thus confronted with a different issue, its conclusion that relevant waiver provisions of

necessarily focused on the specific language of Act no. 6 of 1990 as incorporated into section 1731.[12] The court noted that section 1731 begins by stating that "No motor vehicle liability insurance policy shall be delivered or issued for delivery . . . unless uninsured or underinsured motorist coverages are offered." *Gutman, supra* at 312, 630 A.2d at 1265 (citing 75 Pa.C.S. §1731(a)). The court concluded that these references to the "delivery" of an "insurance policy" make it "evident that this statutory provision does not apply to self-insurers." *Id.* This is because with a self-insurer there is no "policy" to deliver; nor would a self-insurer "purchase" uninsured or underinsured motorist coverage. *Id.* The *Gutman* court likewise concluded that "a self-insurer has no agent or broker and no need to sign a waiver form because there is no policy of insurance." *Id.* In reaching this conclusion that court emphasized that in analyzing statutory provisions, it was bound by "the plain, clear meaning of a statute." *Id.* at 313, 630 A.2d at 1265.

Under this analysis, Hertz was not obligated to provide underinsurance motorist coverage to Ingalls by virtue of its failure to conform to the waiver requirements of section 1731. These waiver requirements do not apply to self-insurers such as Hertz. Consequently, pursuant to the January 4, 1996 order in this case, judgment was entered in favor of defendant Hertz Corporation and against plaintiff Maura M. Ingalls, trustee for the benefit of United Services Automobile Association.

---

section 1731 do not apply to self-insurers is central to resolving the instant controversy concerning the obligation of Hertz to provide underinsured motorist coverage.

12. See n.10 *supra* for the interrelationships between section 1731 and Act no. 6 of 1990.